UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
**F I L E D**

JUL 2 0 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-252-GWU

ANTHONY D. CLARK,          PLAINTIFF,

VS.      **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,          DEFENDANT.

## INTRODUCTION

The plaintiff, Anthony D. Clark, appeals from the negative administrative decision on his own application for Child's Disability Insurance Benefits (CIB) and Supplemental Security Income (SSI). The case is before the Court on cross-motions for summary judgment.

## CHILD'S DISABILITY INSURANCE

An individual who becomes disabled as defined by 42 U.S.C. Section 423(d) before attaining the age of twenty-two, who is the dependent child of a person entitled to old age or disability insurance benefits or fully insured at the time of his/her death, and who is unmarried at the time of application, is entitled to CIB. 42 U.S.C. Section 402(d)(1).

CIB benefits employ the same disability standards as are used to determine disability in adults. 42 U.S.C. Section 423(d).

1

Clark

## ADULT'S SUPPLEMENTAL SECURITY INCOME

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 CFR 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 CFR 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 CFR 404.1520(c), 404,1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 CFR 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 CFR 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 CFR 404.1520(e), 416.920(e).

2

Clark

> 7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 CFR 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must beremembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968,

3

Clark

973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 CFR Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's

4

Clark

instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 CFR 416.965(a) and 20 CFR 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on

6

strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The administrative law judge (ALJ) found that for the period at issue after July 3, 2001,[1] Clark suffered from attention deficit hyperactivity disorder, an affective disorder, and obesity. (Tr. 14). Nevertheless, he believed the plaintiff was capable

---

[1] This was the date of an unappealed agency decision on a previous application for benefits and came the month after Clark's 18th birthday. (Tr. 49, 642-648). This previous decision had analyzed Clark's eligibility for benefits under child's SSI standards.

7

Clark

of engaging in a restricted range of medium level work. (Tr. 16, 17). While unable to perform his past work, Clark was found capable of engaging in significant numbers of jobs in the national economy, as identified by a vocational expert (VE). (Tr. 18).

The VE had been asked to assume the following hypothetical characteristics: (1) a medium level lifting capacity, (2) an ability to stand and walk six out of eight hours, (3) the ability to sit six out of eight hours, (4) a need to avoid ropes, scaffolds and ladders, (5) an ability to occasionally climb ramps and stairs, (6) a moderate limitation in the ability to maintain attention and concentration for extended periods, (7) a "moderately limited" ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, (8) a "moderately limited" ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace with a reasonable number of length of rest periods and (9) a "moderately limited" ability to interact appropriately with the general public and to respond appropriately to changes in the work setting. (Tr. 910-911).

The exhibits addressing the time frame relatively close to that applicable to <u>this</u> application for benefits[2] included a Comprehensive Care Center Psychological

---

[2]The majority of exhibits came from the previous period, and these show that the plaintiff was generally felt to have few physical problems and average intelligence, but

8

Clark

Evaluation from 2001 when Clark was still 17 years old. (Tr. 554). His general tone was described as somewhat aggressive, but he exhibited good conversational skills,

---

some behavioral or learning problems–although there was some evidence of improvement in his problems or opinions that it was a question of motivation. Some of these exhibits documented treatment at the Kentucky River Community Care (KRCC) records since the early 1990s. An attention deficit hyperactivity disorder (ADHD) had been diagnosed at least by 1993. (Tr. 501, 515). In 1996, Clark was described by staff members as having above average in intelligence, but with behavioral problems (Tr. 440); the patient reportedly had a violent encounter with a classmate (Tr. 407). The following year, he was said to have displayed a manic affect, but by 1999 and 2000, he was generally descried as stable, doing "OK" or "well" and either pleasant, friendly, or cooperative. (E.g., Tr. 337-339, 359, 353, 354). School records showed Special Education placement in the sixth grade for the 1994-1995 school year. (Tr. 171). A May, 1995 Psychoeducational Assessment from the Leslie County Board of Education found Clark had a verbal IQ score of 115 and above average reading comprehension and oral expression skills, but moderately low scores on written expression and the Vineland Adaptive Behavior Scale, although the plaintiff was described as pleasant to work with. (Tr. 131-133). The school's advisory committee wanted to retain him in the sixth grade because of his social difficulty and refusal to do work, but the decision was vetoed by the parents and principal. (Tr. 185-189). In a Meeting Summary from 1996, Clark had been described as having "outstanding potential" but having trouble staying on task and being an instigator of misbehavior. (Tr. 201). The plaintiff eventually received regular classroom placement with Special Language Arts instruction. (Tr. 149). This placement was continued in 1997 with the notation that Clark was "very intelligent [but] lazy." (Tr. 150). As of 1999, his verbal IQ continued to be above average and his social competence and written expression moderately low (Tr. 142); placement was continued (Tr. 144). His 11th grade course work included classes such as Business Management and English III. (Tr. 169). His 12th grade teacher completed a questionnaire in 2000 indicating that Clark had "the potential" to compete with his peers but lacked the motivation (Tr. 518); he had no problems with his peers but was disorganized, uninterested and daydreamed (Tr. 519). James Leisenring evaluated the plaintiff in 2000 and noted that the patient exhibited low average intelligence, but had Attention Deficit Hyperactivity Disorder and was "moderately limited" in motor functioning, self care, communicating, socializing and completing tasks. (Tr. 535). Besides the information about Clark's mental status, the old exhibits included a 1995 abnormal EKG (Tr. 326), albeit the concurrent physical examination was described as normal (Tr. 330), as were the results of a 2000 physical examination (Tr. 540-541).

9

Clark

had normal attention and concentration, and appeared alert. (Tr. 555). Overall intellectual functioning was considered to have been in the average range. (Tr. 556). On the Conners Continuous Performance Test, he showed no sign of attention difficulties. (Id.). The examiner did not feel he had an Attention Deficit Disorder, but felt Clark's symptoms might possibly be related to fetal alcohol syndrome or depressive symptoms. (Tr. 557). Although he was believed to have a learning disorder, no such exact diagnosis was made. (Tr. 556). The authors of the report did not list specific functional restrictions.

Throughout late 2000 and in 2001, the plaintiff had been described by the staff at KRCC as "doing well", "fairly well", and/or stable. (Tr. 565-568). No specific functional limitations were independently addressed by this source.

Phil Pack examined the plaintiff in October, 2001 and described him as being physically neat, attentive to task and oriented, but having a flat affect and evident deficits in social skills. (Tr. 612-613). The discrepancy between Clark's verbal IQ (103) and performance IQ (75) was said to be seen in those with learning disabilities. (Id.). There were no deficits in overall cognition, but this "nice young man" was felt to need social skills training. (Tr. 614).

Medical Reviewer Jane Brake opined that the plaintiff was moderately limited in: (1) the ability to understand and remember detailed instructions, (2) the ability to

10

Clark

carry out detailed instructions, (3) the ability to work in coordination with or proximity to others without being distracted by them, (4) the ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, (5) the ability to interact appropriately with the general public, (6) the ability to respond appropriately to changes in the work setting and (7) the ability to set realistic goals or make plans independently of others. (Tr. 634-636). Medical Reviewer H. Thompson Prout named somewhat different "moderate" restrictions. (Tr. 773-776). Medical Reviewer Edward Stodola also noted somewhat different "moderate" restrictions. (Tr. 812-814). However, all of the medical reviewers' various moderate mental restrictions were included in the hypothetical question given to the vocational expert.

Late in the process, additional records were submitted from the KRCC facility. None of these list functional restrictions cited by a treating source, or a GAF score. Narrative progress notes do not reveal any specific limitations to a lay reviewer such as the undersigned. The 2002 and 2003 progress notes, for example, refer to the claimant as "doing fairly well" (Tr. 818), "no problems with mood reported" (Tr. 820), "Calm. . . good eye contact, mood euthymic" (Tr. 821, 825, 829). Earlier notes mention that he was excited about graduation from high school (Tr. 839) and was

11

applying for summer jobs. (Tr. 837). Also added was a letter from the plaintiff's employer from November, 2001 to February, 2002; she indicated, among other statements, that the plaintiff was unable to perform his past job as a customer service representative (Tr. 851), which is compatible with the ALJ's finding of an inability to perform past work.[3]

Thus, the plaintiff's mental condition was properly considered by the ALJ.

The new record also contains evidence of physical complaints. In early 2001, the plaintiff underwent physical therapy for neck and back pain,[4] and at the end was able to perform most living activities and function daily at a high level. (Tr. 722). He was treated for a suspicious mole, periodic ear complaints, sinusitis, a gallstone, tiredness, orchitis and bronchitis. (Tr. 728-758), but no long-term functional restrictions were suggested, as was noted along with other factors by Medical Reviewer Humildad Anzures, who felt there would be no medically determinable physical impairment to limit work activity physically (Tr. 617).

---

[3]Some of the letter included hearsay statements from a coworker about the plaintiff's ability to engage in schoolwork. The employer was neither a vocational expert nor a mental health specialist, so her remarks were justifiably limited to the questions of the plaintiff's ability to return to past work.

[4]The plaintiff apparently first complained of back pain after lifting 80 pounds in July, 2001. (Tr. 755).

12

Clark

applying for summer jobs. (Tr. 837). Also added was a letter from the plaintiff's employer from November, 2001 to February, 2002; she indicated, among other statements, that the plaintiff was unable to perform his past job as a customer service representative (Tr. 851), which is compatible with the ALJ's finding of an inability to perform past work.[3]

Thus, the plaintiff's mental condition was properly considered by the ALJ.

The new record also contains evidence of physical complaints. In early 2001, the plaintiff underwent physical therapy for neck and back pain,[4] and at the end was able to perform most living activities and function daily at a high level. (Tr. 722). He was treated for a suspicious mole, periodic ear complaints, sinusitis, a gallstone, tiredness, orchitis and bronchitis. (Tr. 728-758), but no long-term functional restrictions were suggested, as was noted along with other factors by Medical Reviewer Humildad Anzures, who felt there would be no medically determinable physical impairment to limit work activity physically (Tr. 617).

---

[3]Some of the letter included hearsay statements from a coworker about the plaintiff's ability to engage in schoolwork. The employer was neither a vocational expert nor a mental health specialist, so her remarks were justifiably limited to the questions of the plaintiff's ability to return to past work.

[4]The plaintiff apparently first complained of back pain after lifting 80 pounds in July, 2001. (Tr. 755).

12

Clark

Greater physical restrictions were noted by two other medical reviewers. Restrictions given by P. Saranga and Kenneth Phillips (Tr. 779-786, 789-796) were compatible with the hypothetical given to the vocational expert, except for a reference to a need to avoid hazards. In view of the equally-placed Anzures, however, this omission did not amount to reversible error.

This the ___20___ day of July, 2005.

*[signature]*
G. WIX UNTHANK,
Senior Judge